EQUALITY SAVINGS AND LOAN
ASSOCIATION, a corporation,
Plaintiff-Respondent,

v.

MISSOURI PROPERTY INSURANCE
PLACEMENT FACILITY,
Defendant-Appellant.

No. 36668.

Missouri Court of Appeals,
St. Louis District,
Division Two.

May 18, 1976.

J. H. Cunningham, Jr., Jerome M. McClaughlin, Wilson, Cunningham & McClellan, St. Louis, for defendant-appellant.

Richard Wolff, Kappel, Neill, Staed & Wolff, St. Louis, for plaintiff-respondent.

STEWART, Judge.

This is an action brought by Equality Savings and Loan Association, plaintiff, and the holder of a deed of trust on property damaged by fire, against Missouri Property Insurance Placement Facility, defendant, on a policy of fire insurance issued by defendant. The trial court entered judgment in favor of plaintiff under the "Standard Mortgage Clause" of the policy.

Defendant appeals contending (1) that the policy was void because the policy was issued in response to a written application in which the owner of the property misstated a material fact, (2) property owner, in executing the application, was plaintiff's agent, and (3) because the broker through whom the policy was written and who obtained the application from the owner of the property was selected by plaintiff.

This case was tried upon an agreed statement of facts.

Pansy Lee Irvin and Frank Irvin, her husband, were the owners of a residence at 4708 Page Boulevard in the City of St. Louis. On August 14, 1959, Mr. and Mrs. Irvin executed certain notes secured by a deed of trust upon the property, to Bernard Hollander as trustee for Al Mallioux. The notes and deed of trust were then transferred to plaintiff for valuable consideration.

On August 14, 1971, when the notes became due plaintiff and the owners of the property entered into a renewal agreement

by which the deed of trust was renewed to secure the payment of a principal balance of $2681.50.

The deed of trust required the property owners to furnish fire insurance in an insurance company acceptable to plaintiff. On January 22, 1973, plaintiff through its authorized agents, Hahn-Lippelman, obtained a written application for renewal of a policy of fire insurance upon the building and contents from the owners. The application was forwarded to defendant by Hahn-Lippelman and in reliance upon the application defendant issued its policy numbered 35941 in renewal of policy 01621 effective March 14, 1973 to March 14, 1974. The policy provided that any loss to the building would be payable to plaintiff subject to the provisions of the "mortgage clause attached" to the policy.

At the time the application was executed by the Irvins taxes on the property were delinquent in the total sum of $337 covering a portion of the year 1970 and the years of 1971 and 1972. The application for insurance which was signed by Mr. and Mrs. Irvin contained a question which asked if there were any delinquent taxes against the property. The question was answered "no". Plaintiff and Hahn-Lippelman had no knowledge that the taxes were delinquent.

On July 6, 1973, the building described in the policy was damaged by fire in an amount in excess of $3000. Defendant was given due notice of the loss and plaintiff filed a proof of loss in proper form claiming $2263.14, representing the principal balance due on the notes which were secured by the deed of trust. When the defendant learned that the real estate taxes were delinquent it denied liability under the mortgage clause of the policy.

It was the established practice of defendant to decline the application and refuse to insure property upon which there were delinquent taxes.

It was further stipulated that plaintiff would deliver to defendant, upon demand, the deed of trust and other collateral.

The pertinent portion of the "union" or "standard mortgage clause" contained in the policy of insurance issued in this case reads as follows:

"Loss or damage, if any, under this policy, shall be payable to the mortgagee [or trustee], named on the first page of this policy, as interest may appear, and this insurance as to the interest of the mortgagee [or trustee] only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee [or trustee] shall, on demand, pay the same."

That portion of the mortgage clause which provides that the insurance as to the interest of the mortgagee "shall not be invalidated by any act or neglect of the mortgagor or owner of the . . . property" has been given a very broad and liberal interpretation. That clause has been interpreted to mean that such insurance is not invalidated by any act or neglect on the part of the mortgagor before, at the time of, or after the policy is issued. This has long been the rule in Missouri. *Burns v. Insurance Company of Pennsylvania*, 224 S.W. 96 (Mo.App.1920). This rule has been adopted in most of the states that have undertaken to interpret the same or similar clauses.[1]

1. *Citizens State Bank v. State Mut. Rodded Fire Ins. Co.*, 276 Mich. 62, 267 N.W. 785 (1936) (false statement by mortgagor in application re status of title and amount of indebtedness).

*Ohio Farmers Ins. Co. v. Hull*, 45 Ohio App. 166, 15 Ohio L.Abs. 17, 186 N.E. 823 (1932) (mortgagor concealed true nature of his interest in the property).

*Reed v. Firemans Ins. Co.*, 81 N.J.L. 523, 80 A. 462 (N.J.1911) (misrepresented ownership in property).

*Fayetteville Bldg. & L. Asso. v. Mutual F. Ins. Co.*, 105 W.Va. 147, 141 S.E. 634 (1928) (owner

Under the agreed statement of fact there was clearly no coverage afforded to the owners of the property. The "Standard Mortgage Clause" as interpreted by the courts contemplates just such a situation as this. In fact the defendant's policy provides that it shall have the right of subrogation against the owner for the amounts paid to the mortgagee where defendant claims that it has no liability under the policy as to the owner.[2]

Defendant contends that since the owners were required to provide a policy of insurance they became the agents of the plaintiff and thus plaintiff is bound by their statements in the policy. There is nothing in the statement of fact from which we can say the trial court erred in not finding the existence of an agency relationship. In any case the clear language of the "Standard Mortgage Clause" anticipates that it is the mortgagor or owner who will make application for the policy and specifically provides that the actions of the mortgagor shall not affect the validity of the policy so far as the mortgagee is concerned.

As stipulated by the parties neither plaintiff nor Hahn-Lippelman had any knowledge that the statement made by Mr. and Mrs. Irvin in the application respecting the taxes was false. Although Hahn-Lippelman were the brokers selected by plaintiff for the placement of the insurance they did not execute the application which contained the false statement. We can find no basis for attributing the false statement to plaintiff.

Once the policy was issued, a separate contract arose between plaintiff and defendant which was not affected by the ac-

tions of the owners in procuring the policy. There was a binding contract of insurance between plaintiff and defendant which was in effect at the time of the loss. The judgment of the trial court is affirmed.

CLEMENS, P. J., and KELLY, Jr., J., concur.

in application falsely stated that the property within a town and within 30 yards of a fire hydrant).

*Polar Mfg. Co. v. Integrity Mut. Ins. Co.,* 7 Wis.2d 443, 96 N.W.2d 822 (1959) (false and inaccurate answers in application for fire insurance).

2. "Whenever this Company shall pay the mortgagee [or trustee] any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee [or trustee] the whole principal due or to grow due on the mortgage, with interest accrued thereon to the date of such payment, and shall thereupon receive a full assignment and transfer of the mortgage and all such other securities; but no subrogation shall impair the right of the mortgagee [or trustee] to recover the full amount of his, her or their claim."