**AVEMCO INSURANCE COMPANY,**
Plaintiff-Appellant,

v.

**JEFFERSON BANK & TRUST COMPA-
NY et al., Defendants-Respondents.**

No. 42085.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 23, 1980.

Motion for Rehearing or to Transfer to
Supreme Court Denied Jan. 27, 1981.

Application to Transfer Denied
March 9, 1981.

Daniel E. Wilke, Clayton, for plaintiff-appellant.

Wayne L. Millsap and Pamela Wright, Clayton, for defendants-respondents.

STEWART, Presiding Judge.

This case originated as an action brought by Avemco Insurance Company, a corporation (Insurer) against Jefferson Bank and Trust Company (Mortgagee) seeking injunctive relief against Mortgagee for interference with Insurer's business interests. Mortgagee filed a counterclaim upon a policy of insurance issued by Insurer to Fred Tomlin upon an aircraft owned by Tomlin. Mortgagee had a security interest in the aircraft and was named as a payee under the loss payable clause and under a breach of warranty endorsement to the insurance policy.

The parties with consent of the court, stipulated that the counterclaim be tried separately and before the Insurer's cause of action. The court heard the counterclaim upon an agreed statement of fact and entered judgment for Mortgagee in the sum of $4,453.58. The judgment was designated as a final judgment for purposes of appeal under Rule 81.06.

We reverse the judgment on the counterclaim.

Mortgagee held a chattel mortgage upon an aircraft owned by Fred Tomlin. Tomlin obtained a policy of insurance from Insurer. Paragraph "C" of the policy covered "[a]ll loss or damage to the aircraft" including damage while in flight. As pertains to the issues in this case the policy under paragraph (g) of the exclusions provides that "losses due to (1) ... any taking of the aircraft or any loss or damage thereof by any Government or governmental authority or agent (whether secret or otherwise) or by any military, naval, or usurped power, whether any of the foregoing be done by way of requisition or otherwise and whether in time of peace or war, and whether lawful or unlawful."

The policy provided that any loss under coverage "C" was payable to the named insured and mortgagee. The policy also contained a "Breach of Warranty Endorsement" often referred to as a "Union Mortgage Clause" or "Standard Mortgage Clause." The endorsement, as pertinent to our consideration, reads as follows:

"Loss, if any, under Coverage C of this policy shall be payable as interest may appear to the lienholder named in Item 8 of the declarations and this insurance as to the interest of the . . . mortgagee . . . (herein called the lienholder) shall not be invalidated by any act or neglect of the lessee, mortgagor or owner of the within described aircraft nor by any change in the title or ownership of the property.

. . . . .

Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements, or warranties of the below mentioned policy, other than as above stated."

On February 7, 1973, Tomlin's aircraft crashed in Mexico. At the time of the crash it was not being operated in violation of any condition or exclusion within the terms of the policy of insurance. As a result of the crash the aircraft was damaged to the extent of $3,825.00 and this amount was paid to Mortgagee.

Following the crash the Mexican government seized the aircraft and while detained it was further damaged in the sum of $4,453.58 by reason of vandalism, exposure to weather and general deterioration.[1]

Insurer refused to pay for the damages to the aircraft that resulted from the seizure and detention of the aircraft by a foreign government. The refusal to pay for this loss was premised upon exclusion (g) which is set out above.

The single issue is whether exclusion (g) is applicable to Mortgagee.

A breach of warranty endorsement creates an independent contract of insurance between the lienholder and the insurer. It provides coverage in accordance with the provisions of the policy of insurance issued to the mortgagor or owner as amplified by the terms of the endorsement. The primary purpose of the endorsement is to protect the lienholder's interests against the breach of conditions of the policy by the

acts of the mortgagor. Although the endorsement creates an independent agreement, it is not a complete contract in itself, rather it is "ingrafted upon the main contract of insurance contained in the policy itself [and is] to be rendered certain and understood by reference to the policy . . ." *General Motors Acceptance Corp. v. Western Fire Insurance Co.,* 457 S.W.2d 234, 236 (Mo.App.1970). It assures the lienholder that the coverage provided by the policy will not be invalidated by any act or neglect on the part of the mortgagor before, at the time of or after the policy is issued. *Equality Savings & Loan Assn. v. Missouri Property Insurance Placement Facility,* 537 S.W.2d 440, 441 (Mo.App.1976). The policy in this case provides that Mortgagee's interest "[s]hall not be invalidated by any act or neglect of the . . . mortgagor," except "conversion, embezzlement or secretion by the lessee, mortgagor or purchaser in possession of the property insured . . ." unless an additional premium is paid.

The breach of warranty endorsement also provides that "[n]othing herein contained shall be held to vary, alter or extend any of the terms, conditions, agreements or warranties of the . . . policy, other than as above stated." Except as provided by the endorsement, Mortgagee obtained no greater coverage than Tomlin. *Waynesville Security Bank v. Stuyvesant Insurance Co.,* 499 S.W.2d 218, 220 (Mo.App.1973). By exclusion (g) Tomlin was not insured against any loss to the aircraft resulting from the seizure of the aircraft by the Mexican government. The seizure was not occasioned by any act or neglect of Tomlin but rather was an incident specifically excluded from coverage under the terms of the policy.

We are cognizant of the proposition that any ambiguity between the breach of warranty endorsement and the exclusions in the policy will be construed in favor of the insured. In such case we are also to

1. The aircraft was eventually released. The seizure did not result in change of title or ownership.

give effect to the intentions of the parties. *Allison v. National Insurance Underwriters,* 487 S.W.2d 257 (Mo.App.1972). We, however, find no conflict between the breach of warranty endorsement and exclusion (g).

Mortgagee directs our attention to the fact that the language of exclusion (e)(3)[2] also can be found in the breach of warranty endorsement and contends that "if exclusion (g) was intended to be included in the endorsement" it too would have been set out in the endorsement. Mortgagee contends that as a consequence there is a conflict between exclusion (g) and the endorsement and the policy should be interpreted to cover the loss occasioned by the seizure.

We repeat the pertinent portions of the endorsement for the convenience of the reader:

"In consideration of the premium charged it is agreed that:

Loss, if any, under Coverage C of this policy shall be payable as interest may appear to the lienholder . . . and this insurance as to the interest of the . . . mortgagee . . . shall not be invalidated by any act or neglect of the lessee, mortgagor or owner of the within described aircraft nor by any change in the title or ownership of the property; provided, however, that the conversion, embezzlement or secretion by the lessee, mortgagor or purchaser in possession of the property insured under a bailment lease, conditional sale, mortgage or other encumbrance is not covered under such policy, unless specifically insured against and premium paid therefor . . ."

■ It is apparent that the language of exclusion (e)(3) is included in the endorsement because the acts of conversion, embezzlement or secretion are acts that would be committed by the primary insured and would be within the coverage of the policy except for the proviso. The exclusionary language eliminates the possibility of ambiguity between the broad coverage of the endorsement, so far as acts of the mortgagor are concerned, and the terms of exclusion (e)(3). It is a special exclusion which can be eliminated upon payment of an additional premium. The concluding sentence of the breach of warranty endorsement[3] clearly confines the coverage of the Mortgagee to all of the terms of the contract other than acts or neglect of the mortgagor or any change in the title or ownership of the aircraft. Exclusion (g) is not a condition, the violation of which would work a forfeiture or void the coverage. By the terms of the policy, seizure by a foreign government was a risk that was never assumed by the insurer. *General Motors Acceptance Corp. v. Western Fire Insurance Co., supra.* The loss sustained by reason of the seizure of the aircraft was not covered by insurer's policy.

The judgment of the trial court is reversed and the cause is remanded so that insurer may proceed under its petition.

WEIER and SNYDER, JJ., concur.

PER CURIAM.

Respondent, in the motion for rehearing and suggestions in support thereof, as he did in his brief, quotes from a deposition of one of the Bank's officers.

■ This was an attempt at establishing an ambiguity in the policy. The deposition was not introduced into evidence and was not placed before this court. It was not considered when the opinion was written and we may not consider it now because we may not consider matters dehors the record. *National Indemnity Co. v. Liberty Mutual Insurance Co.,* 513 S.W.2d 461 (Mo.1974).

■ The respondent for the first time urges that the crash was the proximate cause of the damages sustained after sei-

---

2. "(e) Under Coverage C, to loss or damage (3) due to conversion, embezzlement or secretion by any person in possession of the aircraft under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance."

3. "Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements, or warranties of the below mentioned policy, other than as above stated."

zure. This is not a theory upon which the case came to us for review. This issue was not presented to the trial court nor to us, and may not be urged at this late date in the motion for rehearing. New propositions and complaints may not be presented for the first time on motion for rehearing. *Ackerman v. Globe-Democrat Publishing Co.*, 368 S.W.2d 469. (Mo.1963) cert. denied 375 U.S. 949, 84 S.Ct. 353, 11 L.Ed.2d 276.

The motion for rehearing or transfer is overruled.