**INGERSOLL–RAND FINANCIAL CORP., Plaintiff-Appellee,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, a Mutual Co., Defendant-Appellant.**

No. 84–3463.

United States Court of Appeals, Fifth Circuit.

Sept. 23, 1985.

S. Daniel Meeks, Lawrence E. Abbott, New Orleans, La., for defendant-appellant.

Lugenbuhl, Larzelere & Effefson, Charles E. Lugenbuhl, Stewart F. Peck, New Orleans, La., for plaintiff-appellee.

Before WISDOM, POLITZ, and TATE, Circuit Judges.

TATE, Circuit Judge:

Based upon admiralty and maritime jurisdiction, 28 U.S.C. § 1333, Fed.R.Civ.P. 9(h), the plaintiff-mortgagee ("Ingersoll-Rand") sues the defendant hull insurer ("Employers") of a vessel to recover under a "standard" loss-payee mortgage clause. The hull insurance policy issued to the insured owner-mortgagor ("Mire") of the vessel covered only named perils; these did not include the theft of the vessel. Under the findings of fact of the district court, which are not clearly erroneous, Fed.R.Civ.P. 52(a), the loss of the vessel was caused by the theft of the vessel, *but* the theft resulted from the negligent acts or omissions of the insured, Mire. The district court granted Ingersoll-Rand, the plaintiff-mortgagee, recovery against Employers, the defendant insurer; the latter appeals, contending that the mortgagee cannot recover for a risk not covered by the insuring agreement between the owner-mortgagor and the insured.

We affirm. The standard mortgage clause creates a separate contract of insurance between the insurer and the mortgagee, and this clause provided that the interest of the mortgagee shall not be impaired "by any act of or omission or neglect" of the mortgagor-owner—in the present case, being the negligent acts and omissions that resulted in the theft of the insured vessel.

## I.

Preliminarily, although the present marine hull insurance policy is a

**912**

maritime contract falling within the admiralty jurisdiction of the federal courts, *New England Marine Insurance Company v. Dunham,* 78 U.S. (11 Wall.) 1, 34–36, 20 L.Ed. 90, 100–01 (1871), nevertheless, the interpretation of a contract of marine insurance is—in the absence of a specific and controlling federal rule—to be determined by reference to appropriate state law. *Wilburn Boat Company v. Firemen's Fund Insurance Company,* 348 U.S. 310, 312–16, 75 S.Ct. 368, 369–71, 99 L.Ed. 337 (1955). No countervailing federal rule is cited to us. The district court correctly determined that Louisiana law was—in the view of that state's substantial and legitimate interest—the appropriate state law to resort to for the interpretation of the present marine hull insurance contract and endorsements: The policy was delivered in Louisiana to insure Louisiana property of the Louisiana mortgagor-owner, with the loss occurring in Louisiana, and with both parties to the present action being foreign corporations authorized to do business in Louisiana, out of which Louisiana doing-business arose the present litigation. *Walter v. Marine Office of American,* 537 F.2d 89, 94 (5th Cir.1976); *Irwin v. Eagle Star Insurance Company,* 455 F.2d 827, 829–30 (5th Cir.), *cert. denied,* 409 U.S. 852, 93 S.Ct. 118, 34 L.Ed.2d 95 (1972).[1]

Employers' hull insurance policy covering the vessel was a "named peril" policy, in which it insured the vessel against all the risks named in the perils clause (and, by implication, risks not named were not covered). Gilmore and Black, The Law of Admiralty, § 2–9 at pp. 71–72 (2d ed. 1975).[2] In the present policy, for instance, the named perils included "the adventures and perils of the waters ..., fire, lightning,

earthquake," etc.; also, loss of or damage to the vessel caused by *accidents* "in loading, discharging or handling cargo, or in bunkering," breakdown of motor generators or other electrical equipment, "negligence of charterers and/or repairers," "negligence of master, mariners, engineers or pilots," etc. (The accidental loss was not covered, however, if it "resulted from want of due diligence by the assured, the owners or managers of the vessel, or any of them.")

Both parties agree that loss by theft of the vessel was not among the named perils covered by the policy; so that the insured mortgagor-owner (Mire) could not itself recover on the policy for the present loss if occasioned by a theft of the vessel. The crux of the insurer Employers' argument, not supported however by most if not all of the cases cited by it (*see* note 3, *infra*), is that the mortgagee-additional insured Ingersoll-Rand could not receive coverage by its standard mortgage clause (see II below) for a risk not covered by the principal policy to which this standard mortgage clause was an endorsement.

## II.

The plaintiff Ingersoll-Rand had loaned Mire, the owner-insured of the stolen vessel, $55,000 and had been granted a first preferred ship mortgage on the vessel to secure the note. Ingersoll-Rand by endorsement to the hull policy issued by Employers to Mire was made an additional loss payee with regard to the insured vessel. By further endorsement, and in consideration of the premium included, the insurer Employers entered into an agreement with Ingersoll-Rand, the mortgagee, that sea-

---

**1.** We advert to these well-settled principles only because the defendant Employers on appeal contests their application, without advancing arguable reasons to the contrary. Employers does not, for instance, point to any federal rule contrary to the interpretations adopted by the Louisiana courts, which are, moreover, in accord with the interpretations adopted by the great majority of other American state jurisdictions.

**2.** A "named peril" policy is to be differentiated from an "all risks" policy. "A policy of insur-

ance insuring against 'all risks' creates a special type of coverage that extends to risks not usually covered under other insurance; recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Dow Chemical Company v. Royal Indemnity Company,* 635 F.2d 379, 386 (5th Cir. 1981).

worthiness of the vessel was admitted, and further agreed that:

> [T]he interest of the mortgagee shall not be impaired or invalidated by any act of or omission or neglect of the mortgagor, owner, master, agent, crew, of the vessel(s) insured by this Policy or by any failure to comply with any warranty or condition over which the mortgagee had no control or over which the mortgagee could, but has not exercised such control, or by any change in the title, ownership, or management of such vessel(s) ...

■ This is what is known as a "standard" or "union" mortgage clause. *May v. Market Insurance Company,* 387 So.2d 1081, 1083–84 (La.1980); 10 Couch on Insurance 2d (Rev. ed.), § 716 (1982). Under this clause, " 'an independent or separate undertaking exists between the mortgagee and the insurer, which contract is measured by the terms of the mortgage clause itself. There are accordingly in substance two contracts of insurance, the one with the mortgagee, and the other with mortgagor.' " *May, supra,* 387 So.2d at 1084, quoting § 42:694, Couch on Insurance 2d (1963) now at Couch on Insurance 2d (Rev. ed. 1982) § 42:728. As is uniformly held, under a standard mortgage clause the mortgagee may recover for the loss of the insured property (up to the amount of his debt and within the limits of the mortgage clause) despite a policy defense against the mortgagor-insured himself, at least where (as here) the fault or neglect of the latter has occasioned the loss to the detriment of the interest of an insured mortgagee. *See also* Couch on Insurance 2d, *supra,* §§ 717, 719, 720, 725, 728, 736–39; 5 Appleman and Appleman, Insurance Law and Prac-

tice, § 3401 at pp. 282, 289–93 (1970). Annotation, "Insured's Fraud—Loss Payee's Rights," 24 ALR 3d 435, 439–40 (1969).[3]

Where the issue has been squarely presented, the modern decisions are unanimous, and the earlier decisions virtually so, in holding that a mortgagee under a standard mortgage clause may (where not guilty himself of any breaches of policy conditions) recover from the insurer for a loss sustained by the mortgaged property, even though the risk be excluded from the policy coverage, where any act of the mortgagor has caused or contributed to the loss as resulting from an excluded risk; and even though as between the mortgagor-insured and the insurer there is no coverage because of some default by the mortgagor. The more recent decisions include: *Underwriters at Lloyd's London v. United Bank Alaska,* 636 P.2d 615, 618 (Alaska 1981); *American National Bank and Trust Company v. Young,* 329 N.W.2d 805, 811–13 (Minn.1983); *Hartford Fire Insurance Company v. Associates Capital Corporation,* 313 So.2d 404, 407–08 (Miss.1975); *Fort Hill Federal Savings and Loan Association v. South Carolina Farm Bureau Insurance Company,* 281 S.C. 532, 316 S.E.2d 684, 687–88 (1984); *Security Insurance Company of Hartford v. Commercial Credit Equipment Corporation,* 399 So.2d 31, 34 (Fla.App.), *pet. for rev. denied,* 411 So.2d 384 (Fla.1981); *Charter Bank of Boonville v. Shelter General Insurance,* 664 S.W.2d 44, 46–47 (Mo.App.1984); *Don Chapman Motor Sales, Inc. v. National Savings Ins. Co.,* 626 S.W.2d 592, 596–97 (Tex.App.1982), *writ refused, no reversible error* (Tex.1983).

---

**3.** The "standard" or "union" mortgage clause here applicable is to be distinguished from the "simple" or "open" mortgage clause. The latter simply provides that the proceeds of the policy shall first be paid to the mortgagee as his interest appears, but it does not provide a separate undertaking that the mortgagee's interest shall not be impaired by any act or neglect of the insured-mortgagor. In effect, the "simple" mortgage clause is simply to make the mortgagee an appointee of the insurance fund, with a right of recovery no greater than that of the mortgagor-insured. *See May, supra,* 387 So.2d

at 1083; Couch on Insurance 2d, *supra,* §§ 42:693, 694; Appleman, Insurance Law and Practice, *supra,* § 3401 at pp. 282–84, 293–95; Annotation, *supra,* 24 ALR 3d at 437.

In Employers' argument that the loss-payee mortgage clause can afford the mortgagee no greater rights than the coverage afforded by the principal policy, at least some of the decisions relied upon by Employers, *e.g., Wells Fargo Bank International Corporation v. London Steam-Ship Owners' Mutual Insurance Association,* 408 F.Supp. 626 (S.D.N.Y.1976), distinguishably concern a "simple" mortgage clause.

The rationale of these decisions may be summarized as follows:

The provision in the standard mortgage clause that with respect to the mortgagee the insurance shall not be invalidated by any act of the mortgagor does "not refer merely to acts prohibited by the contract or to failure to comply with the terms thereof, but literally embrace[s] *any* act of the mortgagor" that leads to impairment of the mortgagee's insurance protection afforded by the clause. 10 Couch on Insurance 2d (Rev. ed.) § 42:719, p. 755) (1982) (emphasis added). "This clause constitutes an independent contract between the insurer and the mortgagee covering the mortgagee's insurable interest, and not merely the property, and is affected only by acts of the mortgagee." *Don Chapman Motor Sales, Inc., supra,* 626 S.W.2d at 597. The intent of the standard mortgage clause is that "the mortgagee's right to recover will not be invalidated by the act or negligence of the mortgagor" and that "no act or default of any person other than the mortgagee … shall affect the rights of the mortgagee to recover in case of loss." *Hartford Fire Insurance Company, supra,* 313 So.2d at 407. *See* Couch on Insurance 2d, *supra,* § 42:736. " '[I]nsofar as the provisions of the policy are inconsistent with or antagonistic to the clause protecting the interest of the mortgagee, they must be regarded as inapplicable in determining his rights.' " *Security Insurance Company of Hartford, supra,* 399 So.2d at 34 (quoting from treatise text now found at Couch on Insurance 2d (Rev. ed.) § 42:720 (1982)).

■ Although the precise issue before us has not surfaced in any reported Louisiana decision we could find, there is no reason to conclude that Louisiana would not adopt the nigh-uniform construction by other jurisdictions of the protection afforded a mortgagee's interest a standard mortgage clause, which Louisiana recognizes as affording independent coverage to the mortgagee in accord with the terms of the clause. *May v. Market Insurance Company,* 387 So.2d 1081, 1084 (La.1980). Thus, although here the theft of the insured vessel was not a risk covered by the policy between the mortgagor-insured and the insurer, the loss of the vessel was nevertheless insured as to the mortgagee's interest under the terms of the standard mortgage clause agreement between the mortgagee and the insurer, because the theft-loss of the vessel resulted from the negligence of the mortgagor.

Only two decisions cited by Employers lend some support to its contention that the protection afforded a mortgagee by a standard mortgage clause may not afford the mortgagee coverage excluded by the unambiguous terms of the policy: *Avemco Insurance Company v. Jefferson Bank & Trust Company,* 613 S.W.2d 436, 438 (Mo. App.1980) and *General Motors Acceptance Corporation v. The Western Fire Insurance Company,* 457 S.W.2d 234, 237 (Mo. App.1970). There, however, the Missouri intermediate courts in each instance specifically found that no act of the mortgagor-insured had contributed to the loss excluded by the policy.[4] However, if—as here—an act or neglect of the mortgagor had invalidated the insurance, Missouri would like all other jurisdictions have given the standard mortgage clause a broad construction that afforded independent coverage to the mortgagee. *Charter Bank of Boonville, supra,* 554 S.W.2d at 46; *Equality Savings and Loan Association v. Missouri Property Insurance Placement Facility,* 537 S.W.2d 440, 441–42 (Mo.App.1976).

We thus find no merit to the defendant Employers' contentions on appeal.[5]

---

4. In so doing, the Missouri intermediate courts characterized an "act" of the mortgagor that impaired coverage less broadly than did the decisions cited in this opinion (which included not only the mortgagor's act but also its foreseeable consequences within the clause's protection against impairment of the mortgagee's security), a distinction critically noted in *American Na-*
*tional Bank and Trust Company v. Young,* 329 N.W.2d 805, 811–12 (Minn.1983) as representing an isolated view.

5. The defendant finally contends that a ruling that protects the mortgagee in this case will promote deliberate and fraudulent acts by a mortgagor that lead to loss of his vessel and the

*Conclusion*

Accordingly, we AFFIRM the judgment of the district court granting the mortgagee Ingersoll-Rand recovery under its standard mortgage clause for the unpaid secured debt upon the stolen vessel.

AFFIRMED.

payment of his debt through the insurance proceeds. This argument overlooks that the standard mortgage clause provides that, upon payment to the mortgagee, the mortgagee's claim and security interest are assigned to the insurance company to the extent of the payments received, thus giving the insurance company the right to collect from the mortgagor the debt still owed by him to the mortgagee.