**ZURICH INSURANCE COMPANY,**
Plaintiff–Counter–Defendant/Appellee,

v.

**Carl Lewis WHEELER, an individual and d/b/a C & W Enterprises,**
Defendant–Counter–Defendant/Appellees,

and

**Orange Production Credit Association,**
Defendant–Counter–Plaintiff/Appellant.

No. 86–6426.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 1987.

Decided Jan. 28, 1988.

John F. Hendry, Garden Grove, Cal., for defendant-counter-plaintiff/appellant.

Thomas M. Crehan, San Pedro, Cal., for defendant-counter-defendant/appellee, Carl Lewis Wheeler.

Frank R. Acuna, Hawkins, Schnabel & Lindahl, Los Angeles, Cal., for plaintiff-counter-defendant/appellee.

Before HALL, NOONAN, Jr. and THOMPSON, Circuit Judges.

NOONAN, Circuit Judge:

Orange Production Credit Association (the Mortgagee) appeals from judgment in favor of Zurich Insurance Company (the Insurer) in a suit on a policy of hull insurance endorsed in favor of the Mortgagee. The suit is in admiralty under 28 U.S.C. § 1333. California law governs. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 316, 75 S.Ct. 368, 371, 99 L.Ed. 337 (1955). We reverse the judgment of the district court and remand for entry of judgment for the Mortgagee.

## FACTS

On September 20, 1982, the Insurer issued a policy, effective for one year, on the fishing vessel *Enterprise* in favor of Carl Wheeler and C & W Enterprises (the Assured) in the amount of $500,000. The perils insured against were the common ones, taken from the Lloyd's policy in the First Schedule of the British Marine Insurance Act, 1906, 6 Edw. 7, c. 41: "of the Seas, Men–of–War, Fire, Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettison, Letters of Mart and Counter–Mart, Surprisals, Takings at Sea, Arrests, Restraints, and Detainments of All Kings, Princes, and Peoples, Barratry of the Master and Marines, and all other like Perils, Losses and Misfortunes," excepting such perils as excluded elsewhere. An "Additional Perils" clause and a "Pollution Hazard" clause added a variety of accidents; explosions; the breakdown of electrical machinery; contact with aircraft, rockets, or similar missiles; the negligence of masters, officers, crew or pilots, and the destruction by the government to abate a pollution hazard, with the proviso as to all these events that "such loss or damages has not resulted from want of due diligence by the Assured." Ship collision liability was also covered.

A separate clause entitled "War Strikes and Related Explosions" overrode the clauses on perils and declared that the policy did not cover "any loss, damage, or expense" caused by a variety of acts including capture, seizure, arrest, or detainment, piracy, strikes or "malicious acts or vandalism unless committed by the Master or Mariners." In February 1983, in return for a reduction of the premium by $1,755, the insurance was reduced to $350,000.

The payee of the policy was the Mortgagee. In addition there was a Hull Mortgage Endorsement attached to the policy, which as between the Insurer and the Mortgagee admitted the seaworthiness of the ship and stated:

And the interest of the mortgagee shall not be impaired or invalidated by any act of [sic] neglect of the mortgagor, owner, master, agent, or crew of the vessel insured by this policy, or by any failure to comply with any warranty or condition over which the mortgagee has no control or over which they [sic] have control but have not exercised such control, provided that the loss in the absence of such act or neglect or breach of warranty or condition would have been a loss recoverable under the policy.

The "act of neglect" marked above by "sic" was an obvious misprint and was corrected by the trial court to read "act or neglect."

The Mortgagee was acknowledged in the endorsement to hold a mortgage of $156,-000, and the Assured was denied the privilege of canceling the policy without the Mortgagee's written consent. The total premium paid, $12,990, included the Hull Mortgage Endorsement without indication of how the premium was allocated. The endorsement was sufficiently common to be identified by the insurance agent simply as "ENDT # 1."

Wheeler, the owner of the *Enterprise*, owed the Mortgagee $214,000 principal and accrued interest. The Mortgagee had already foreclosed on his home and in July 1983 had filed an action to foreclose on the ship. Wheeler discussed with his girlfriend Linda Stone the possibility of sinking the ship to obtain the insurance. On August 8, 1983 he sought and got from the Mortgagee permission to take the *Enterprise* on a fishing trip. The Mortgagee imposed conditions on the voyage; Wheeler agreed that the net profit from the trip would be paid to it. On the evening of August 13, 1983, near Catalina Island in calm to moderate

weather, Wheeler assisted by Linda and her son, opened a butterfly valve in a discharge line with the result that the fish hold flooded from a back flow of sea water through the discharge line. The ship sank.

## PROCEEDINGS

Wheeler submitted a claim to the Insurer seeking the full amount of the insurance. The Mortgagee also made proof of loss covered under the policy. The Insurer refused to pay and instead brought a declaratory judgment action against Wheeler and the Mortgagee, seeking a judgment that the sinking of the *Enterprise* was caused by a peril not insured against by the policy. The district court found that Wheeler had scuttled his ship. The court held that scuttling, "the deliberate sinking of a vessel by its owner," was not a peril enumerated and insured against.

The court entered judgment for the Insurer on March 27, 1986. On April 9, 1986 the Mortgagee moved for a new trial and for amendment of the judgment. The motion was heard on June 2, 1986, the court instructing the Mortgagee's counsel to prepare a formal order denying its motion. This order was signed by the court and entered on June 6, 1986. Notice of its entry, however, was not received by the Mortgagee. On July 9, 1986 counsel for the Mortgagee talked by telephone to the clerk of the court and was told that the order had not been entered. The Mortgagee learned of the entry of the order only on August 8, 1986. On August 20, 1986, seventy-four days after the entry of the order denying a new trial, the Mortgagee filed a motion to extend the time to file an appeal and/or for vacation of the entry of judgment. On September 15, 1986 the district court vacated the judgment and reentered it effective that date. The Mortgagee then filed a timely appeal.

## ANALYSIS

*Timeliness of the Appeal.* Notice of appeal must be filed within 30 days after the entry of judgment. Fed.R.App.P. 4(a). The Mortgagee failed to do so. However, for "compelling reasons," the district court may vacate its original entry of judgment and reenter its order in order to permit an appeal to be taken. *See Kramer v. American Postal Workers Union,* 556 F.2d 929, 930 (9th Cir.1977). But if the district court abuses its discretion in extending the appeal period by vacating and reentering judgment, this court is without jurisdiction. *Rodgers v. Watt,* 722 F.2d 456, 458 (9th Cir.1983) (en banc).

■ The failure of the clerk to give notice is not a ground, by itself, for a finding of excusable neglect, but is a factor to be considered along with other circumstances. *Id.* at 460. In this case, the clerk failed to give notice and then told counsel that the order had not been entered. Counsel exhibited sufficient diligence in checking with the clerk. His reliance on the clerk's representation was an excuse for failing to file within the prescribed time. There was no prejudice to the Insurer, especially as the trial judge had indicated at the hearing on the motion for a new trial his expectation that an appeal would be taken. The Rule 60(b) motion to vacate judgment was filed within two weeks of discovery of the original entry. The district court did not abuse its discretion in vacating and reentering judgment.

■ *The Risk Insured.* Scuttling of a ship with the owner's consent or connivance is not a "peril of the sea" in the usual contract of marine insurance. *Gilmore and Black on Admiralty* (2nd ed. 1975) §§ 2–9. A peril of the sea is a fortuitous casualty due to the sea; it is not the intentional human destruction of the vessel. *P. Samuel and Co. v. Dumas* 1924 App.Cas. 431 (H.L.). The phrase "all other perils" are perils of the same sort as those already specified; scuttling is not included. *Id.* at 449. Consequently a mortgagee cannot recover for scuttling by a mortgagor. *Id.*

Following the decision of the House of Lords in *P. Samuel,* the London underwriting market devised a form of endorsement in favor of a mortgagee to permit the latter to recover in the event of scuttling by the mortgagor. That form set out: "In the

event of loss the Assured's right of recovery hereunder shall not be prejudiced by the fact that the loss may have been attributable to the wrongful act or misconduct of the shipowners or their servants committed without the privity of the Assured." *See Shell International Petroleum Co. Ltd. v. Gibbs.* *(The Salem )* [1983] 1 All ER 745, 751 (H.L.). Under that clause it is intended to treat scuttling as a peril of the sea. The innocent mortgagee may recover. *Id.*

 The Hull Mortgagee Endorsement here starts out as a form of the type upheld in *The Salem.* It is an independent contract between the Insurer and the Mortgagee, M. Rhodes, 10A *Couch on Insurance 2d* § 42.73 (Rev. ed. 1982). If the clause that begins "and the interest of the mortgagee shall not be impaired" stood without the "provided" clause tacked on, there would be no doubt that the Mortgagee could recover for the scuttling. The endorsement was of the sort known as "standard" or "union" and is intended to provide coverage to a mortgagee innocent of the destructive acts of the mortgagor. *Ingersoll Rand Financial Corp. v. Employers Ins. of Wasau,* 771 F.2d 910 (5th Cir.1985), *cert. denied* 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 573 (1986). *The Salem* is authority that this language has added scuttling to the risks insured against. The single case urged by the Insurer for the contrary proposition, *Certain Underwriters v. Engs Motor Truck Co.,* 135 Cal.App.3d 831, 185 Cal.Rptr. 613 (1982) is not apposite: the case deals with theft of a vehicle; it is irrelevant to marine insurance which has its own special history and is to a large extent still guided by British precedent and practice. *The Eliza Lines,* 199 U.S. 119, 128, 26 S.Ct. 8, 9, 50 L.Ed. 115 (1905) (Holmes, J.); Buglass, *Marine Insurance and the General Average in the United States* 4 (2 ed. 1981).

The difficulty is in the "provided" clause that appears to take away part of the protection given by what precedes it. This subtraction of coverage is not in itself a difficulty: the style of the contract is to add and then subtract as is done with war risks. The Insurer maintains that the proviso takes away the coverage for scuttling because the loss here in the absence of Wheeler's act would not have been recoverable—that is, without Wheeler's act there would have been no scuttling and hence no recoverable loss.

The argument of the Insurer is not ultimately persuasive. The "loss" referred to in the proviso is loss or damage not risk. The loss in this case is the destruction of the ship by water. If the sinking had not been caused by Wheeler's act the sinking would have been a chance misfortune caused by the sea. Absent Wheeler's misconduct, the loss would have been recoverable. This proviso does not take back what the main clause gave—protection to the Mortgagee against scuttling.

Reversed and remanded with instructions to enter judgment for Orange Production Credit Association.