Noland W. DUBOIS

v.

**ARKANSAS VALLEY DREDGING COMPANY, INC.**

Civ. A. 85–0682–A.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Jan. 7, 1987.

George A. Flournoy, Fuhrer, Flournoy & Hunter, Alexandria, La., for plaintiff.

Machale A. Miller, Lindsay A. Larson III, Randell E. Treadaway and Ford J. Deith, O'Neil, Eichin & Miller, New Orleans, La., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LITTLE, District Judge.

This matter was tried on 25 August 1986 and submitted by the parties after the filing of post-trial briefs and stipulations. Predicated upon the evidence and stipulations the following factual and legal findings support a judgment in favor of the plaintiff.

Arkansas Valley Dredging Company, Inc. (AVD) owned the dredge TULSA upon

which Noland W. Dubois was employed as a deckhand. The TULSA was one of the vessels used by AVD in fulfilling its contract with Pensacola Construction Company. Basically, Pensacola Construction Company had contracted with the U.S.A. through the Army Corps of Engineers to do dredging work in the bed of Red River, which river forms a boundary between the parishes of Grant and Rapides in the State of Louisiana. The dredging operation had been subcontracted by Pensacola to AVD.

Approximately five months after his employment with AVD, the plaintiff experienced an at-work injury. The plaintiff slipped while descending a staircase and injured his right shoulder. This Jones Act-general maritime lawsuit was filed initially against AVD only. The bankruptcy of AVD was sufficient cause for plaintiff to enlarge the class of party-defendants to include Aetna Casualty & Surety Company (Aetna), the liability carrier for AVD. Included in a standard complaint for damages was a request for punitive damages as plaintiff asserts that AVD willfully violated its duty to furnish and maintain a seaworthy vessel. The plaintiff also suggests that Aetna, as insurer, is responsible for payment should this Court find that AVD was willfully negligent.

This matter was stayed as to AVD due to the previously described bankruptcy. The trial was therefore limited to the dispute between Dubois and Aetna, the insurer of AVD.

Plaintiff's status as a seaman is not contested. His activity on the date of the accident, 22 January 1985, is also not contested. The dredge TULSA had worked only a few minutes from 14 January through 22 January 1985. The plaintiff was given the job of cleaning the haul gear machinery during the downtime. This rather complex piece of machinery was hoisted over the deck floor and suspended there so that plaintiff could perform the function assigned to him. He was told to clean the machine by applying diesel fuel to various parts and then to wipe the piece clean with paper rags. Plaintiff would ac-

quire the rags from a storeroom below deck. He would climb into the room by use of a staircase having six stairs and one (not two) handrails. The lighting was not inadequate. The stair steps were of steel construction with square studs on the surface. They were not covered with antislip or abrasive material. The plaintiff made a number of trips up and down those stairs beginning at 10:00 A.M. on the date of the accident. But at 3:00 P.M., while performing a descent, he slipped on the stairs, grabbed the rail with his right hand and injured his right shoulder in the process. The plaintiff acknowledges that the dredge deck was coated with diesel fuel, as were his shoe bottoms, as were the stair steps and floor of the storeroom.

■ It was negligent for the operators of the dredge TULSA to allow an unsafe condition to exist and become more severe over a 5–hour period. This unsafe condition renders defendant liable under the Jones Act. Further, the presence of diesel fuel on the deck and stairs caused the vessel to be unseaworthy. Unseaworthiness exists "when the oil or grease creates such a condition of slipperiness that the deck is no longer reasonably fit for its intended use." *Dunlap v. G. & C. Towing, Inc.,* 613 F.2d 493, 496 (4th Cir.1980) (quoting *Rice v. Atlantic Gulf & Pacific Co.,* 484 F.2d 1318, 1321 (2d Cir.1973)).

■ While we are in the forest of fault the plaintiff's action must be examined to determine if he contributed to his injury. The slippery condition of the deck and stairs were known to the plaintiff. The fact that he traversed the same area on many occasions on the same day without falling would indicate that he employed a safe and cautionary climbing and descending procedure. The plaintiff did have knowledge of the unsafe situation but he made every attempt to keep the nest clean which had been fouled by diesel fuel and an accumulation of grease and oil from sources over which he had no control. The paper towels were used to maximum efficiency but even industrial strength Bounty would not have cleaned the oily area. The

plaintiff looked for soap and detergent to clean the area. None was available. The plaintiff descended with maximum care and was not in a hurry. How much more can we expect this relatively timid and quiet man to do on his own behalf? We are most impressed with plaintiff's testimony that when he pointed out the messy, sloppy area to the company engineer, the engineer's only response was "so what." We find that the plaintiff reacted with as much care as one could expect of a seaman under similar circumstances. Contributory negligence is not present in this case.

■ Fortunately plaintiff's injury is not serious. At worst he will experience some minor use limitation of his shoulder. For past pain and suffering an award of SEVEN THOUSAND AND NO/100 ($7,000.00) DOLLARS is satisfactory. For future pain and suffering an award of TWENTY-THREE THOUSAND AND NO/100 ($23,-000.00) DOLLARS is justified.

■ Plaintiff has not suffered any permanent loss of earning capacity. The evidence suggests that plaintiff has engaged in post-accident activities such as tractor driver, woodcutter, handyman, garbage hauler, fisherman, builder, crop planter and the like. He may have experienced some shoulder discomfort which may not improve but that discomfort has not rendered him unemployable in any respect. No permanent loss of earning capacity was experienced by the plaintiff due to the accident, at least a preponderance of the evidence does not support such a conclusion.

In the post-trial brief filed by plaintiff a demand of $11,560 is made for earnings loss from date of accident to date when maximum medical cure was achieved, approximately a 10–month period. A review of the record indicates that the plaintiff was employed in various occupations subsequent to the accident which we have previously noted. The evidence does not support a net loss of earnings for the 10–month period dating from the accident to date of maximum medical recovery. In fact most, if not all, of the occupations performed by the plaintiff after the accident produced an hourly wage equivalent in amount to that earned on the TULSA. Again, a preponderance of the evidence does not support any recovery for post-accident wage loss or future wage loss.

■ Plaintiff is entitled to recover medical expenses in the amount of TWO HUNDRED SEVENTY–FOUR AND 99/100 ($274.99) DOLLARS. The bills for those charges (plaintiff's exhibit 20 thru 24) were submitted at the trial and are admittedly owed.

Ordinarily we would punctuate this ruling at this point with a period. One issue of importance remains, however, and it is an unusual issue. Punitive damages are demanded by the plaintiff charging AVD with gross negligence under the general maritime law. More specifically, the plaintiff claims that AVD knowingly and continuously operated a squalid and unsafe ship.

■ Before we examine that issue by analyzing the factual evidence we must first determine if the defendant is responsible for punitive damages. The defendant is not AVD but is Aetna, the insurance carrier. AVD, as we have said, is in bankruptcy and is not involved in this decision. The question for our determination is: Does the Aetna policy provide coverage to its insured if the actions of its insured are so negligent so as to trigger an award for punitive damages? The answer is in the negative.

Assuming, but not deciding, that AVD's actions were so willful and wanton as to invoke properly a punitive damage penalty under maritime law and further assuming, but not deciding, that Aetna's policy would provide coverage to AVD for such punitive damages, enforcement of the insuring provisions of the policy would be contrary to public policy. We must remember that the plaintiff has been fully compensated for his direct injuries. Punitive damages are only recoverable if the defendant's actions are so lacking that the defendant must be punished and must be deterred by that punishment from again committing the same acts. One would hope others will also be so de-

 

terred. See *In re Merry Shipping, Inc.*, 650 F.2d 622 (5th Cir.1981). The *purpose* of a punitive damage award is to punish one for heinous behavior and deter others from pursuing a similar course of conduct. The *purpose* is not to compensate the plaintiff for that has already been accomplished. Admittedly, the plaintiff's compensation is a secondary result but is not the primary purpose of the rule. The purpose is thwarted if the wrongdoer can cover his tracks by dragging an insurance policy behind him. No better analysis can be offered than that submitted by Judge John Wisdom in *Northwestern National Gas Co. v. McNulty*, 307 F.2d 432, 441 (5th Cir.1962).

> Where a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct. It is not disputed that insurance against criminal fines or penalties will be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent.

> The policy considerations in a state where, as in Florida and Virginia, punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well as nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be pun-

ishing itself for the wrong committed by the insured.

For these reasons we need not analyze the punitive damage aspect of the case as it relates to Aetna. Public policy will not allow recovery. See also an unpublished opinion from Judge Henry Mentz in *Smith v. Front Lawn*, No. 83–5147 (E.D.La. September 29, 1986).

Plaintiff will prepare a judgment within ten (10) days of this date and transmit it to the defendant who will have ten (10) days to send it to this Court with approval or with objections.