UNITED STATES FIDELITY &
GUARANTY COMPANY

v.

Michael S. WILLIAMS, J. Robert Lee
and the North River Insurance
Company.

Joan Robienczak TRUEHART, Wife
of/and Donald Truehart

v.

Peter C. BLANDON, J. Robert Lee, III,
the M/V BUCCANEER, Her Engines,
Etc., In Rem, United States Fidelity and
Guaranty Company and ABC Insurance Companies.

Civ. A. Nos. 87–0796, 87–0708.

United States District Court,
E.D. Louisiana.

Dec. 30, 1987.

Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, Ashton R. O'Dwyer, Jr., New Orleans, La., for USF & G and Peter C. Blandon.

Chaffe, McCall, Phillips, Toler & Sarpy, John H. Clegg, L. Havard Scott, III, Trial Atty., New Orleans, La., for the Trueharts.

Bienvenu, Foster, Ryan & O'Bannon, Hugh M. Glenn, Jr., Trial Atty., Franklin H. Jones, III, New Orleans, La., for J. Robert Lee, III, North River Ins. and U.S. Fire Ins. Co.

John D. Rawls, New Orleans, La., for Michael Williams.

OPINION

CHARLES SCHWARTZ, Jr., District Judge.

This matter as to insurance coverage was tried before the Court without a jury on Wednesday, December 10, 1987. Having considered the record, the testimony of the witnesses, and the applicable law, the Court rules as follows. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as conclusions of law; to the extent any of the following conclusions of law constitute findings of fact, they are adopted as findings of fact.

This is the second time the Court has had to determine a controlling issue of law concerning the tragic accident aboard Peter Blandon's yacht.[1] The issue before the Court is simply stated: under its yacht policy with Mr. Blandon, may USF & G

1. *See also Truehart v. Blandon,* 672 F.Supp. 929   (E.D.La.1987) (Schwartz, J.).

assert a subrogated claim for hull damage against a permissive user of the yacht? Because the policy is ambiguous on this issue and ambiguities are, by law, construed against the insurer, the Court determines that USF & G may assert no such claim.

## I. *Findings of Fact*

The material facts concerning the accident are not in dispute. The parties only dispute the proper construction of the insurance policy at issue.

On February 26, 1986, several of Peter C. Blandon's friends joined him for the day on Lake Pontchartrain aboard his 41–foot Hatteras yacht. Among the guests were J. Robert Lee III, Michael S. Williams, and Victor Truehart. On the way home, Mr. Blandon turned the helm over to Mr. Lee and went below deck. At the time, Dr. Williams was standing near Mr. Lee. While Mr. Lee was at the helm, the yacht struck the Lake Pontchartrain Causeway Bridge and sank. Mr. Truehart died from the accident.

As owner of the yacht, Mr. Blandon had in full force and effect on that date a yacht policy of insurance issued in Louisiana by United States Fidelity and Guaranty Company (USF & G).[2] USF & G has paid Mr. Blandon $85,100 for the damage to his yacht and now seeks to recover that money. To this end, alleging negligence by Dr. Williams and/or Mr. Lee, USF & G brought this action against Dr. Williams,[3] Mr. Lee, and Mr. Lee's homeowner/GCL insurer (The North River Insurance Company).

The 3¼–page, easy-to-read policy is divided into two parts: "Section I—Coverages," generally for hull damage, and "Section II—Coverages," generally for liability from a yacht accident. The policy also has a definition section for eight special terms and a section for general conditions applying to all coverages. Among the definitions are the following three:

In this policy "you" and "your" refer to the named insured shown on the Declaration Page [viz., Mr. Blandon]. Your spouse is included, if living in the same household.

"We", "us" and "our" refer to the company providing this insurance [viz., USF & G].

"**Insured person**" means you, a **family member** and anyone else using the **insured yacht** with your consent. Such use must be without charge and for private pleasure only. A paid master or crew member, or anyone (or their employees) operating a boatyard, marina, sales agency or similar business are not included. Insurance provided for others under this policy does not cover their possible liability to you.

The hull coverage section of the policy, "Coverage A," provides:

**Coverage Provided**—We will pay for direct and accidental loss to the **insured yacht** including equipment usually required on board for operation and upkeep. Coverage is provided while the yacht and equipment are afloat, on shore or being transported on land.

This section contains the following special condition:

**No Benefit To Bailee**—No one having custody of the property insured, and being paid for services, shall benefit from this insurance.

The yacht liability section, "Coverage D," provides:

**Coverage Provided**—We will pay damages for **bodily injury** or **property damage** for which any **insured person** becomes legally liable because of a yacht accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages....

Among the exclusions for this section is the following:

**Exclusions**—Coverage D does not apply to: ...

---

2. Exh. P–1 (USF & G Yacht Policy No. YP1530-86/YP022561814).

3. On December 2, 1987, USF & G moved for voluntary dismissal with prejudice of its claims against Dr. Williams. For more on this motion, see the Court's Order and Reasons signed today.

2. Damage to property owned by, rented to, used by or in the care of any **insured person**.

Finally, among the general conditions are a subrogation clause and an "other insurance" clause:

> **Our Right To Be Repaid**—If we pay a loss to or on behalf of anyone having a right to recover damages from others, we shall take over that person's right of recovery. That person must assist us in our efforts to recover the amount we paid. . . .
>
> **Other Insurance**—This insurance is excess over any other valid and collectible insurance.

The remaining provisions in the policy are immaterial to today's dispute.

The sole issue for which the Court sought evidence is whether the last sentence in the "Insured Person" Definition has a specific, generally accepted meaning in the insurance industry.[4] To resolve this issue, the Court appointed Dr. Robert S. Felton to give an expert opinion.[5] In addition, the parties sought the opinions of their own experts, Mr. Leslie J. Buglass for USF & G[6] and Mr. Donald S. Malecki for the defendants.[7]

While the large portion of these three's testimony consisted of their different opinions on the legal conclusions of various provisions in USF & G's policy, the answer to the Court's sole concern for seeking testimony is simply put. None of the three experts[8] indicated any standard industry interpretation to the sentence. In fact, both Mr. Malecki[9] and Mr. Buglass[10] said that the sentence had no such interpretation.

## II. *Conclusions of Law*

### A.

■ This action concerns a marine insurance policy and a tort claim for hull damage from a collision in navigable waters. As the Court has noted in the consolidated action of *Truehart v. Blandon*,[11] such a tort claim falls within the Court's admiralty jurisdiction. Further, interpretation of marine insurance contracts falls within such as well.[12] In sum, as all parties concede, this Court has subject matter jurisdiction, for the action concerns an admiralty or maritime claim.[13]

■ While interpretation of USF & G's policy is governed by federal, maritime law, the Court is to follow state law in construing the policy, as long as there is no conflicting federal policy.[14] The vessel owner being a Louisiana resident, the vessel having been kept in Louisiana, the policy having been issued in Louisiana, and the accident having occurred in Louisiana, Louisiana law is the appropriate state law; there being no conflicting federal statute or general maritime policy, this Louisiana

4. Mr. Lee and his insurer had brought the matter before the Court on a motion for summary judgment; Dr. Williams, on a motion to dismiss. Rather than rule on the motions at that time, the Court requested evidence to determine what standard interpretation, if any, the insurance industry gives to this sentence.

5. *See generally* F.R.Ev. 706(a). For Dr. Felton's report, see P–5.

6. *See* Exh. P–6 (Buglass' 12/07/87 deposition, offered in lieu of his live testimony). For his two expert reports, see Exh. P–2 and P–3.

7. *See* Exh. D–1 (Malecki's 12/07/87 deposition, offered in lieu of his live testimony). Attached to the deposition as exhibit 1 is Mr. Malecki's expert report.

8. The Court finds all three witnesses qualified as experts on the interpretation of insurance policies. While Mr. Buglass alone of the three has special expertise in the field of *marine* insurance, the Court notes that USF & G's policy is more similar to policies governed by state law, such as auto policies, than to the typical commercial marine policies.

9. *See* Exh. D–1 at 35:14–36:21.

10. *See* Exh. P–6 at 35:7–35:10.

11. 672 F.Supp. at 931, 935.

12. *De Lovio v. Boit*, 7 Fed.Cas. 418, No. 3776 (C.C.D.Mass.1815) (Story, J.), *cited with approval in Insurance Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 35, 20 L.Ed.90 (1871).

13. *See* F.R.Civ.P. 9(h); 28 U.S.C. § 1333(1).

14. *Walter v. Marine Office of America*, 537 F.2d 89, 94 (5th Cir.1976); *see Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 320–21, 75 S.Ct. 368, 374, 99 L.Ed. 337 (1955).

state law applies.[15] Two generally recognized rules of construction, which Louisiana follows, are noteworthy: first, all ambiguities are construed against the insurer;[16] and second, all exclusions from coverage must be express and clear.[17]

### B.

The defendants moved in limine to exclude all expert testimony on the interpretation of USF & G's policy. For the following reasons, the Court denied these motions.

The Court alone determines the legal effect and construction of USF & G's policy.[18] But the Court was not seeking expert testimony to determine the ultimate legal issue of coverage under the policy. Instead, the Court was seeking the testimony solely to determine what general understanding, if any, the insurance industry has as to the meaning of certain provisions in USF & G's policy. While resolution of this factual question affects the legal issues involved, the factual issue of industry custom is distinct from the legal issue of construction.

The three experts' testimony beyond the Court's sole concern made useful dialogue on the many legal issues a court must consider to determine the proper interpretation of the policy.[19] These portions of their testimony, however, did not amount to legally admissible evidence, but rather were forms of legal argument the Court may follow or reject as appropriate.

### C.

■ Absent clear, express policy language to the contrary, an insurer may not pursue a subrogated claim against an additional insured, or co-insured.[20]

USF & G appears now to concede that both Dr. Williams and Mr. Lee come within the meaning of the first sentence of the "Insured Person" Definition (i.e., that both Dr. Williams and Mr. Lee were using the yacht with Mr. Blandon's consent).[21] No one has suggested that their use was not "without charge and for private pleasure only" (as the definition requires).

■ The issue, then, is whether the last sentence of the "Insured Person" Definition amounts to the clear and unambiguous language required to permit USF & G to subrogate against Dr. Williams and Mr. Lee. Notwithstanding USF & G's protestations to the contrary, the Court cannot find this sentence to amount to as much.

USF & G reads the word "others" as if the sentence read:

Insurance provided for persons other than you does not cover their possible liability to you.

**15.** *Ingersoll-Rand Financial Corp. v. Employers Insurance of Wausau,* 771 F.2d 910, 912 (5th Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 573 (1986).

**16.** *E.g., Walter,* 537 F.2d at 94–95 & 94 n. 16 (construing Louisiana law for a maritime insurance policy).

**17.** *E.g., Scarborough v. Travelers Insurance Co.,* 718 F.2d 702, 707 (5th Cir.1983).

**18.** *E.g., Diversified Group, Inc. v. Van Tassel,* 806 F.2d 1275, 1277 (5th Cir.1987).

**19.** Of the three's legal opinions, Mr. Malecki's appeared the most candid, thoughtful, and reasonable.

**20.** *Lanasse v. Travelers Ins. Co.,* 450 F.2d 580, 584 (5th Cir.1971) (per Brown, C.J.), *cert. denied sub nom. Chevron Oil Co. v. Royal Insurance Co.,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972); *see State Farm Fire & Casualty Co. v.* *Sentry Indem. Co.,* 316 So.2d 185, 188–90 (La. App.3d Cir.1975) (affirming a summary judgment dismissal of subrogation claims brought by a church's insurers against the church's pastor where he was an additional insured under the fire and liability policies).

**21.** In initially opposing the summary judgment and dismissal motions, USF & G argued that neither person was "using the insured yacht with [the owner's] consent" within the meaning of the policy. USF & G having properly abandoned this untenable argument, the Court makes but two points. First, a plausible (and more natural) reading of this phrase would hold that the two men were using the yacht, along with everyone else who was aboard. Second, USF & G's argument that no one consents to another's using his property negligently is too broad: a guest would never have an owner's consent when an accident occurs; the intended additional coverage would be illusory. Because ambiguities are construed against the insurer, the Court must reject USF & G's arguments. *See supra* note 16.

But the Court cannot ignore the context of the sentence; another plausible reading of the sentence is as follows:

> Insurance provided for persons other than "you, a family member and anyone else using the insured yacht with your consent" does not cover their possible liability to you.

With this second reading, the Court could end its opinion here by reciting the familiar rule of construing all ambiguities against the insurer. But the Court believes that even without this rule, USF & G's position would fail.

Even under USF & G's reading of the word "others," the effect of the sentence would not be as USF & G argues. Extrapolated, the sentence would read as follows:

> Insurance provided for Dr. Williams and/or Mr. Lee does not cover their possible liability to Mr. Blandon.

This sentence does not clearly and unambiguously state that USF & G may subrogate against Williams or Lee. In fact, it does not even address subrogation. The sentence merely states that Blandon cannot collect from USF & G for Williams' or Lee's liability to Blandon. In other words, the liability coverage to Williams and Lee under Coverage D would exclude coverage for their liability to Blandon. Construing Exclusion 2 to Coverage D (the "care, custody, or control" exclusion) [22] together with this reading of the sentence, the Court would find this sentence to apply only to liability claims brought by Mr. Blandon for bodily injury liability—the sentence would prevent the policy from becoming a health insurance policy for the named insured. To interpret the sentence as USF & G does (even with its reading above) would, among other things, render both this Exclusion 2

and the no-benefit-to-bailee clause superfluous.

USF & G's interpretation would lead to great inequities as well, for this sentence makes no distinction between family members and non-family guests. If a family member of the named insured, such as a minor child of the named insured, were to have negligently wrecked the yacht, then the named insured's coverage would be most illusory. For USF & G would pay the named insured for the boat repair, but then could turn around and sue his minor child for the money it paid to the child's parent and provider. Peculiar would be the consumer who would want such a policy.

The events that have transpired in this litigation illustrate the problems with USF & G's interpretation. People buy insurance, among other reasons, to ensure adequate protection for their families and friends and to avoid the unfortunate, but all too familiar scenario where families and friends are permanently driven apart by the vicissitudes of litigation. The Court's holding avoids the problems of collusion and cooperation, of having a named insured be forced to oppose his friends because of an obligation to "assist [the insurer]"; [23] USF & G's interpretation certainly has not avoided such problems in this litigation.

Further, the Court's holding avoids the serious conflicts of interest that USF & G's counsel must face under its interpretation. USF & G properly concedes that it is contractually obliged to defend Mr. Lee in the wrongful death action by Mr. Truehart's father. If USF & G is on the one hand to defend Mr. Lee from claims of negligence and on the other to sue him for claims of negligence, then at the least USF & G should retain separate counsel for the two actions.[24]

---

**22.** This clause excludes liability coverage for damage to any property of Mr. Blandon or any other insured person. For example, damage to the yacht is not covered under Coverage D, but only under Coverage A; damage to Mr. Blandon's boatslip or to Mr. Lee's automobile would not be covered under any part of the policy. The intended purpose of this clause is twofold: to avoid USF & G's becoming an insurer of *all* of Blandon's and the other insured persons' property and to have such property more properly insured, if at all, under a primary property policy (such as Coverage A for Blandon's yacht).

**23.** *See* Subrogation Clause, *quoted above* at pages 124–125.

**24.** *See Storm Drilling Co. v. Atlantic Richfield Corp.,* 386 F.Supp. 830 (E.D.La.1974); La.Code of Prof. Responsibility EC 5–15, DR 5–105(b); La. State Bar Ass'n Comm. on Prof. Responsibility, Op. 342 (1974).

Under the Court's holding, USF & G insures more risks than it would under its interpretation of the policy but is free from the administrative burdens of that interpretation. If USF & G is unhappy with its present policy, it may (1) increase its premiums to reflect any increased risks it previously (and erroneously) did not consider, (2) change the language of its policy expressly to state that it may pursue subrogation claims against co-insured persons, including family members and/or anyone else using the yacht with the named insured's consent, or (3) discontinue providing such coverage.

In sum, USF & G has no right to pursue its subrogation claims against Dr. Williams or Mr. Lee.

## D.

For the following reasons, the Court determines there is no just reason for delay in entering final judgment as to these two defendants.[25] Trial as to the issues of liability and damage in this action has been continued pending the resolution of the § 1292(b) appeal in the related wrongful death case, *Truehart v. Blandon*.[26] As of this date, the Fifth Circuit has not decided whether it will exercise its discretion to hear the interlocutory appeal.[27] Final resolution of the remaining claims in the consolidated matters may, therefore, be long off; if final judgment as to Dr. Williams and Mr. Lee is entered at this time, then (if USF & G wants to appeal this Opinion) the Fifth Circuit may be able to hear the related appeals simultaneously and any chance of this Court's having to try the remaining issues twice because of any remand is effectively eliminated.

The sole claims remaining in this action are (1) USF & G's contribution/indemnity claims against Mr. Lee's insurer, North

25. *See* F.R.Civ.P. 54(b).

26. *See* Minute Entries of Nov. 5, 1987.

27. *See* 28 U.S.C. § 1292(b); F.R.App.P. 5(a).

28. Under Louisiana law, courts are to ignore "other insurance" clauses where such clauses in both policies are mutually repugnant and instead are to allocate damages ratably among all insurers. *See generally Sledge v. Louisiana*

River, for any damage for which Mr. Lee may be responsible and (2) Dr. Williams' counterclaim against USF & G for personal injury to Dr. Williams from the accident. No party having yet addressed the applicability of North River's policy or the effect of any conflicting "other insurance" clauses,[28] the Court expresses no opinion at this time on whether USF & G may maintain an indemnity claim or a pro-rata or other contribution claim against North River.

## III. *Conclusion*

The Clerk of Court is hereby directed to enter judgment dismissing with prejudice USF & G's complaint against Dr. Williams and Mr. Lee, USF & G to bear all costs.

USF & G's claims against North River and Williams' counterclaims against USF & G shall not be dismissed at this time. Trial as to the remaining issues is continued pending resolution of all appeals.

*Dep't of Transportation & Development*, 492 So.2d 139, 144–45 (La.App. 1st Cir.), *writ denied*, 494 So.2d 1176 (La.1986). But the mere existence of such clauses in two policies does not necessarily mean the two clauses are mutually repugnant. *See generally Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 462 F.Supp. 485, 492–94 (E.D.La.1978).