Joan Robienczak TRUEHART, et al., Plaintiffs,

v.

Peter C. BLANDON, Defendant–Appellee,

v.

J. Robert LEE, III, The North River Insurance Company, and United States Fire Insurance Company, Defendants–Appellants,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant–Appellee.

No. 88–3880
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1989.

Hugh M. Glenn, Jr., Franklin H. Jones, New Orleans, La., for defendants-appellants.

Ashton R. O'Dwyer, Jr., J. Dwight Le-Blanc, III, Lemle, Kelleher, Kohlmeyer, New Orleans, La., for U.S. Fidelity and Guar. Co.

Before HIGGINBOTHAM, JONES, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Three separate insurance carriers are potentially at risk in this case for the tortious conduct of J. Robert Lee, III. We are asked to review the district court's determination that all three policies should be construed as providing primary coverage for the costs to defend Lee and to settle various claims against him. The district court held that an excess or "umbrella" insurance policy "dropped down" into a pool of unexhausted and readily available primary insurance. The court then apportioned liability among the three insurers according to a Louisiana formula that divides each insurer's maximum policy coverage by the aggregate coverage afforded by all three policies. *Truehart v. Blandon*, 696 F.Supp. 210 (E.D.La.1988). Because we conclude that the district court misapplied Louisiana's doctrine of "mutual repugnancy" and erroneously gave operative effect to the umbrella policy's "drop down" provision, we reverse and remand.

I.

The relevant facts in this case are not in dispute. On the night of February 23, 1986, a yachting accident took the life of 24–year–old Victor Truehart. Peter Blandon had entrusted the nighttime operation of his 41–foot yacht "Buccaneer" to his companion, J. Robert Lee, III, while Blandon went below deck. Shortly after assuming control of the helm, Lee collided with the Lake Pontchartrain Causeway Bridge, sinking the vessel. Of the eight passengers on board, seven survived by clutching

a small, overturned dinghy for 4–5 hours before rescue. The survivors, however, never located Victor Truehart, presumed thrown from the yacht upon initial impact.

Victor's father, Donald Truehart, and others brought a wrongful death action under general maritime law. The plaintiffs sued the yacht *in rem*, Peter Blandon as owner of the vessel, Blandon's yacht insurer United States Fidelity & Guaranty Company (USF & G), J. Robert Lee as operator of the vessel, and Lee's insurers, The North River Insurance Company (North River) and United States Fire Insurance Company (U.S. Fire).

Pursuant to admiralty jurisdiction under 28 U.S.C. § 1333(1), the case was tried without a jury. During trial, the defendants and their insurance carriers settled plaintiffs' claim for $53,000.[1] The trial continued, however, concerning the issue of liability as between defendants Blandon and Lee.

The district court found Lee liable for negligently operating the yacht and Blandon liable for negligently entrusting the vessel to an "obviously inexperienced person" at night.[2] 696 F.Supp. at 214. The court held the operator (Lee) 75 percent at fault, and the owner (Blandon) 25 percent at fault, for all damages and related costs of defense.

The district court found that Blandon was covered solely by USF & G's $300,000 yacht liability policy but that three policies extended protection to Lee. The court reasoned that Blandon's USF & G policy covered Lee because he operated the "Buccaneer" at the direction of the owner.[3] In addition, Lee separately owned a $100,000 homeowner's policy from North River and a $1,000,000 "umbrella" or excess insurance policy from U.S. Fire. The final $53,000 settlement reached with the plaintiffs, and the $29,241.34 in stipulated litigation expenses for Lee, failed to exhaust any single policy at risk in this case.

The district court rejected U.S. Fire's argument that its umbrella or catastrophic policy provided excess insurance if, and only if, Lee's liability exceeded primary coverage of $400,000 ($300,000 from Blandon's USF & G policy and $100,000 from Lee's North River policy). Instead, the district court held that an "other insurance" clause[4] in U.S. Fire's excess policy, coupled with a "drop down" clause[5] in that policy, transformed U.S. Fire into a primary insurer.

In so holding, the district court calculated an aggregate pool of $1,400,000 in primary insurance coverage from all three policies. Applying principles of Louisiana insurance law, the court held each insurer proportionally liable in accordance with each policy's maximum coverage: USF & G incurred 3/14 liability, and North River and U.S. Fire (Lee's insurers) were jointly responsible for the remaining 11/14.[6]

## II.

North River and U.S. Fire do not challenge the district court's application of the Louisiana rule concerning apportionment of separate insurance underwritten by multiple carriers for claims against a single tortfeasor. Instead, they question the court's

1. A personal injury action by passenger Michael Williams against Blandon and his insurer, USF & G, previously had settled for $8,500.

2. The court noted that Lee had only about two hours of unsupervised operational experience with Blandon's vessel. During Lee's only prior nighttime operation, he had had a mishap that caused minor damage to the yacht.

3. Blandon's USF & G policy defines "insured person" as anyone using the yacht with the owner's consent.

4. An "other insurance" clause is a self-serving provision in an insurance policy that attempts

to make the insurer only secondarily liable if another unexhausted policy is available to cover claims. *See* 12A *Couch on Insurance* § 45:628 (M. Rhodes 2d ed. 1981).

5. A "drop down" clause in an umbrella policy typically operates to provide coverage when underlying, principal insurance is exhausted or otherwise unavailable to satisfy claims against the policyholder. *See, e.g., McGuire v. Davis Truck Servs., Inc.,* 518 So.2d 1171, 1173–74 (La. App.), *writ denied,* 526 So.2d 791 (La.1988).

6. The district court expressed no opinion as to how U.S. Fire and North River should allocate their portions between themselves.

construction of U.S. Fire's umbrella policy as providing primary insurance coverage. The application of the Louisiana formula yields a dramatically different result if U.S. Fire is treated as an umbrella insurer and its $1,000,000 policy is excluded from the primary pool: 3/4 liability for USF & G, 1/4 liability for North River, and none for U.S. Fire.

U.S. Fire believes itself to be at no risk for claims against Lee because $400,000 in unexhausted primary insurance coverage is readily available. However, U.S. Fire today finds itself principally responsible for claims and litigation costs against Lee because of the particular mechanics of Louisiana's insurance apportionment rules and a $1,000,000 policy that dwarfs all other available insurance. Similarly, North River finds itself responsible for an undivided 11/14 share of all claims and costs against Lee, as compared to the more agreeable 1/4 share that results if U.S. Fire is treated as a true excess insurer. Not surprisingly, this appeal is limited to the single issue of whether the trial judge erred in holding U.S. Fire to be a primary insurer under the terms of its umbrella policy issued to Lee.

### A.

■ Our first task is to determine the applicable law governing our interpretation of U.S. Fire's policy. U.S. Fire's yacht policy insures against certain maritime risks and losses. Consequently, we conclude that it provides maritime insurance within the meaning of *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). We have previously interpreted *Wilburn Boat* as requiring the application of state insurance law principles if there is no specific and controlling federal rule. *See, e.g., Transco Exploration Co. v. Pacific Employers Ins.*

*Co.*, 869 F.2d 862, 863 (5th Cir.1989); *Ingersoll–Rand Fin. Corp. v. Employers Ins.*, 771 F.2d 910, 911–12 (5th Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 573 (1986). We are aware of no such federal rule here.

■ In identifying the appropriate state law to apply, we look to the state having the greatest interest in the resolution of the issues. *See Transco,* 869 F.2d at 863. We believe that the district court correctly applied Louisiana law since, as noted by the court, the vessel owner was a Louisiana resident, the vessel was moored in Louisiana, and the accident occurred in Louisiana. *See USF & G v. Williams,* 676 F.Supp. 123, 125 (E.D.La.1987). Moreover, because the "interpretation of a contract is a question of law, including the question whether the contract is ambiguous," *Ross v. Western Fidelity Ins. Co.*, 872 F.2d 665, 668 (5th Cir.1989), we will apply *de novo* review to the district court's decision. *Accord Reid v. State Farm Mut. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986).

### B.

The district court's analysis first focused upon Blandon's USF & G and Lee's North River policies. Each policy included an "other insurance" clause claiming secondary liability and purporting to be excess "over any other valid and collectible insurance." The court interpreted Louisiana law as requiring the abrogation of mutually repugnant "other insurance" clauses and the ratable allocation of damages among insurers. *See Williams,* 676 F.Supp. at 128 n. 28.[7] The parties do not contest the district court's interpretation of Louisiana law regarding the mutual repugnancy doctrine for primary insurance or the treatment of USF & G and North River as co-primary insurers.

---

7. The district court cited *Sledge v. Louisiana Dep't of Transp. & Dev.*, 492 So.2d 139, 144–45 (La.App.), *writ denied,* 494 So.2d 1176 (La.1986), as authority for the doctrine of mutual repugnancy and *pro rata* apportionment of insurance. This rule was reaffirmed in *Dean v. State Farm Mut. Auto. Ins. Co.*, 518 So.2d 1115, 1118–19 (La.App.1987), *writ denied,* 522 So.2d 1096 (La. 1988).

The Louisiana rule is designed to avoid the untenable result that if conflicting "other insurance" clauses are given effect, no protection would be available to the insured. *Sledge,* 492 So.2d at 144. Presumably, "other insurance" clauses that do not conflict and thereby produce absurd gaps in coverage are not mutually repugnant.

The district court proceeded to consider U.S. Fire's umbrella policy, noting that it too contained an "other insurance" clause as well as a "drop down" provision.[8] Unlike USF & G's and North River's policies, however, U.S. Fire's policy expressly limited its contractual liability to "the ultimate net loss in excess of the insured's [Lee's] Retained Limit." "Retained Limit" is defined in the policy as the greater of

(a) the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance [North River], and the applicable limits of any other underlying insurance available to the insured [USF & G]; or

(b) an amount stated as "Retained Limit" in the Declarations as a result of any one occurrence not covered by the policies listed in the Schedule of Underlying Insurance or any other insurance.[9]

Only North River's $100,000 policy is listed in the Schedule of Underlying Insurance; USF & G's unlisted $300,000 policy is other insurance available to Lee.

The district court agreed that U.S. Fire intended to provide umbrella coverage, at least with respect to North River's $100,000 policy.[10] However, it failed to treat U.S. Fire as an excess insurer because of what the district court believed to be the combined effect of the policy's "other insurance" and "drop down" clauses.

Admitting that the treatment of "other insurance" clauses between primary and umbrella policies is "not without doubt" under Louisiana law, the district court held that the clauses in USF & G's primary policy and U.S. Fire's excess policy were mutually repugnant and thus ineffective. For reasons not entirely evident to us, the district court accepted appellees' argument that striking the repugnant clause from U.S. Fire's policy necessarily transformed it into primary insurance.

The district court reached this conclusion despite its recognition that all three policies, each bearing "other insurance" clauses, were not mutually repugnant when viewed together. In fact, it admitted that U.S. Fire successfully underwrote an excess policy with respect to North River's policy. 696 F.Supp. at 216.

It appears that the court *separately* held USF & G's and North River's policies—and subsequently USF & G and U.S. Fire's policies—to be mutually repugnant. It then proceeded to treat all three to be co-primary insurers "[d]espite the clear intent as between North River's policy and U.S. Fire's policy, that the latter be an excess as to the former...." *Id.*

### III.

■ We conclude that the district court's analysis misapplied the doctrine of mutual

---

**8.** U.S. Fire's "other insurance" clause states:
> If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the Retained Limit and the Limit of Liability hereunder), the insurance hereunder shall be in excess of, and not contribute with, such other insurance.

The "drop down" clause provides protection in the event primary insurance is not otherwise available:
> With respect to any occurrence not covered by the underlying policies or insurance described in the Schedule of Underlying Insurance attached or any other underlying insurance available to the insured, but covered by the terms and conditions of this policy except for the amount of the Retained Limit specified in the Declarations, the Company shall:
> (a) defend any suit against the insured ...;
> .    .    .    .    .

(c) pay all expenses incurred by the Company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment....

**9.** Section (b) of the definition of "Retained Limit" does not apply in this case, as underlying insurance is available to Lee: $100,000 from North River and $300,000 from USF & G.

**10.** 696 F.Supp. at 216. The wide disparity in insurance premiums reinforces U.S. Fire's argument that it intended to serve as a true excess insurer. *See* 16 *Couch, supra,* § 62:46 (premiums indicate intent to provide primary or excess coverage). Lee paid a $110 annual premium for the $1,000,000 umbrella policy. In stark contrast, he paid $542 for a $100,000 homeowner's policy from North River. Blandon paid $2,359 annually for USF & G's $300,000 yacht policy.

repugnancy and leads to untenable consequences. No Louisiana court has spoken to the precise excess insurance issue involved in this case, but we expect that such a court would not endorse the district court's interpretation of Louisiana insurance law which we review here.

In the first place, we find the "drop down" clause of U.S. Fire's policy to be inoperative for the simple reason that unexhausted, underlying insurance is readily available with North River's $100,000 policy alone, or in combination with USF & G's $300,000 policy. The plain language of the policy indicates that the "drop down" provision comes into play only if primary insurance is *unavailable*. That not being the case, U.S. Fire's policy is not at risk, as claims against Lee fail to exceed $400,000.

Moreover, it is logical to assume that affordable and socially desirable catastrophic insurance would be difficult to obtain in Louisiana if we were loosely to allow transformation of umbrella policies because of boilerplate "other insurance" clauses in primary policies. Consequently, we are not convinced that Louisiana would allow a standard "other insurance" clause in the policy of an unrelated third party (Blandon's yacht policy) to define whether U.S. Fire should be treated as an excess or primary insurer.

The doctrine of mutual repugnancy appears to proscribe transformation of a primary policy into an excess policy if the "other insurance" clause would defeat the primary coverage originally contemplated by the parties and lead to absurd, unintended gaps in insurance protection. We find no benefit in applying the doctrine to achieve a dramatically different result: transforming a true umbrella policy into a primary policy where there is sufficient underlying insurance coverage.

But for Blandon's decision to carry primary yacht insurance with USF & G, U.S. Fire, under the district court's analysis, would have been an excess insurer—not a primary carrier—and thus not exposed to risk. According to the district court's reasoning, the mere presence of an "other insurance" clause in U.S. Fire's policy was sufficient to destroy its status as only an excess insurer. We find this outcome to be contrary to well-settled principles of Louisiana insurance law.

■ The appellees summarily conclude that USF & G's and U.S. Fire's "other insurance" provisions are mutually repugnant without explaining why the clauses of the nonconcurrent policies cannot be reconciled with one another. We conclude, to the contrary, that the appellees' position, if adopted, would unduly expand Louisiana's doctrine of mutual repugnancy and would lead to the kind of untenable result that initially led to the doctrine's judicial development. As noted by the district judge *a quo* in a previous opinion, "the mere existence of ["other insurance"] clauses in two policies does not necessarily mean the two clauses are mutually repugnant." *Williams*, 676 F.Supp. 123, 128 n. 28 (citing *Offshore Logistics Servs., Inc. v. Mutual Marine Office, Inc.*, 462 F.Supp. 485, 492–94 (E.D.La.1978)). The clauses' plain language must be irreconcilable with one another in order to be deemed repugnant. *See Graves v. Traders & Gen. Ins. Co.*, 252 La. 709, 214 So.2d 116, 117–18 (1968).

■ We recognize that "other insurance" clauses in a true excess or umbrella policy may be irreconcilable with another umbrella policy, both of which are at risk because primary insurance is unavailable or exhausted. *See Dean v. State Farm Mut. Auto. Ins. Co.*, 518 So.2d at 1117–18 (finding "other insurance" clauses in competing true excess policies mutually repugnant). This position is consistent with the treatment of competing co-primary insurers such as USF & G and North River. But where, as in this case, the primary insurance is sufficient, there is no gap in insurance coverage even if each "other insurance" clause is given full effect.

Moreover, the doctrine of mutual repugnancy requires only that the "other insurance" clauses be given no operative effect. The doctrine has never been used in Louisiana as an instrument to transform a true excess insurance policy into a primary insurance policy where primary insurance is unexhausted.

In adopting this position, we avoid stretching Louisiana's doctrine of mutual

repugnancy beyond its present—and evidently intended—scope. We also avoid reshaping Louisiana's catastrophic insurance law by giving primary insurers the ability to tap into umbrella policies through the use of boilerplate "other insurance" clauses. At the same time, we reaffirm the Louisiana principle that overlapping bargained-for insurance coverage involving co-primary (or co-umbrella) insurers will not be defeated by boilerplate "other insurance" provisions.

### IV.

In summary, we find U.S. Fire to be an umbrella insurer not at risk in light of the ample primary coverage from USF & G and North River. We also find that the "other insurance" clauses have no operative impact upon the nature of U.S. Fire's coverage of Lee. Using Louisiana's insurance apportionment rule applied by the district court, we hold USF & G to be ¾, and North River ¼, responsible for all claims against Lee and for his related litigation expenses.

We REVERSE the judgment of the district court and REMAND for entry of judgment in accordance herewith.