United States Court of Appeals,

Fifth Circuit.

No. 91–3629.

Albert TAYLOR, Jr., et al., Plaintiffs,

Mrs. Albert Taylor, Jr., Plaintiff–Appellant,

v.

LLOYDS UNDERWRITERS OF LONDON, et al., Defendants,

Stewart Arthur Holmes, as representative of Certain Underwriters at Lloyds, London, Defendant–Appellee.

Sept. 24, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before SMITH and EMILIO M. GARZA, Circuit Judges, and RAINEY,[*] District Judge.

EMILIO M. GARZA, Circuit Judge:

On October 16, 1985, the DMC–1—a liftboat chartered to Drynorth—capsized in the Gulf of Mexico. As a result of the capsize, Taylor and several other seamen were injured. Alleging that the DMC–1 was unseaworthy, Taylor brought suit against Drynorth in federal court under general maritime law. Following trial, the jury returned a verdict, assessing $751,780 in compensatory damages and $500,000 in punitive damages against Drynorth. Drynorth has not operated since 1986 and, at all times relevant to the events surrounding this dispute, Drynorth has been insolvent. Accordingly, Drynorth's insurers paid the majority of the compensatory damages award and will be responsible for the payment of any punitive damages award.

Taylor subsequently filed a declaratory judgment action in Louisiana state court against

---

[*]District Judge of the Southern District of Texas, sitting by designation.

[1]Mr. Taylor has since passed away, and Mrs. Taylor is pursuing this action. The plaintiffs will be referred to as "Taylor".

Lloyd's, seeking a declaration that the three insurance policies[2] Lloyd's issued to Drynorth provide coverage for punitive damages and that Lloyd's is required to pay the damages award assessed against Drynorth. Lloyd's removed the case to federal court, and the parties filed cross motions for summary judgment. Lloyd's argued that coverage for punitive damages does not exist under any of the three insurance policies covering Drynorth at the time of the DMC–1's capsize. Taylor maintained, however, that the Comprehensive General Liability Insurance (CGL) policy provides coverage for punitive damages.[3]

Although the district court set forth the language of the CGL policy in its Order and Reasons, the district court did not analyze the language of any of the insurance policies to determine whether the language provided coverage for punitive damages; instead, the district court concluded that it had to first determine whether to apply Louisiana state law or general maritime law to the dispute. Concluding that general maritime law applies and that maritime law disallows the recovery of punitive damages from an insurance company, the district court granted Lloyd's motion for summary judgment.

## II

Taylor argues that, because Lloyd's removed this case to federal court on the basis of diversity

---

[2]The three insurance policies are: (i) Policy/Certificate number 22191—the Comprehensive General Liability Insurance policy; (ii) Policy/Certificate number 11877—the Excess Marine Liability Insurance policy; and (iii) Policy/Certificate number 22188—the Protection and Indemnity Insurance policy.

[3]The CGL policy states in part that:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [a] bodily injury or [b] property damages to which this insurance applies, caused by an occurrence ..., but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Record Excerpts at tab 5, *Taylor v. Lloyd's,* No. 91–3629 (5th Cir. filed Oct. 22, 1991).

jurisdiction, the district court, in its capacity as an *Erie*[4] court, should have applied Louisiana law. Taylor argues that the district court erred in applying maritime law and in granting Lloyd's motion for summary judgment. Lloyd's, on the other hand, maintains that the dispute is a maritime matter, and contends that the district court properly applied general maritime law to disallow the collection of the punitive damages award from Lloyd's.

In determining the applicable law governing the interpretation of the CGL policy, our analysis begins with *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).[5] In *Wilburn Boat,* the Supreme Court determined that there was no federal admiralty rule regarding the breach of warranties in marine insurance policies and that the Court would not fashion one, but would instead apply state law. *Id.* at 315–16, 75 S.Ct. at 371. Since 1955, this court, in addressing maritime cases, has interpreted *Wilburn Boat* to require "the application of state insurance law principles if there is no specific and controlling federal rule." *Truehart v. Blandon,* 884 F.2d at 226, *citing Transco Exploration Co. v. Pacific Employers Ins. Co.,* 869 F.2d 862, 863 (5th Cir.1989); *see also Ingersoll–Rand Fin. Corp. v. Employers Ins.,* 771 F.2d 910, 911–12 (5th Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 573 (1986) ("[T]he interpretation of a contract of marine insurance is—in the absence of a specific and controlling federal rule—to be determined by reference to appropriate state law."), *citing Wilburn Boat, supra.*

Lloyd's has presented this court with three cases in support of the proposition that general maritime law prohibits the collection of punitive damages from an insurance company. *See Dubois v. Arkansas Valley Dredging Co.,* 651 F.Supp. 299 (W.D.La.1987); *Smith v. Front Lawn Enterprises, Inc.,* No. 83–5147, 1987 AMC 1130 (E.D.La., Sept. 29, 1986); *Northwestern Nat'l*

---

[4]*Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

[5]Because the CGL policy "insures against certain maritime risks and losses," it provides maritime insurance within the meaning of *Wilburn Boat, supra. See Truehart v. Blandon,* 884 F.2d 223, 226 (5th Cir.1989) (Because the "policy insures against certain maritime risks and losses ... we conclude that it provides maritime insurance within the meaning of *Wilburn Boat*....").

*Casualty Co. v. McNulty,* 307 F.2d 432 (5th Cir.1962). However, these cases do not establish a specific and controlling federal rule disallowing the recovery of punitive damages from an insurance company.

In *Smith,* the district court considered whether the Protection & Indemnity policy provided coverage for punitive damages claims and, after examining the insurance policy, the court found that the insurance policy in question did not provide coverage for punitive damage claims.[6] The *Smith* court based its decision to disallow the recovery of punitive damages on the specific language of the insurance policy at issue, reasoning that "the clear language of this portion of the policy is that payment will be made for injury or illness, thus suggesting compensatory damages." *Smith,* 1987 AMC at 1130. The district court addressed the question whether public policy should permit an insurance company to pay for punitive damages only in the penultimate paragraph of the two-page opinion. That paragraph states: "In conclusion, the Court notes that it has been held, in relation to an automobile liability policy, that public policy forbids an insurer and an insured to enter into an insurance contract covering punitive damages." *Id.* at 1131, *citing McNulty,* 307 F.2d at 432.

The issue whether punitive damages may be collected from an insurance company was also addressed by the district court in *Dubois v. Arkansas Valley Dredging Co.,* 651 F.Supp. 299 (W.D.La.1987). The *Dubois* court hypothesized that all requisites to a recovery of punitive damages were satisfied—that is, that the assured's actions were willful and wanton and that the insurance policy provided coverage for punitive damages—but then held that, in any event, "enforcement of the insuring provisions of the policy would be contrary to public policy." *Id.* at 302. Relying on *McNulty*

---

[6]The policy in *Smith* did not expressly enumerate coverage for punitive damage liability. The policy language read in part:

> this Company hereby undertakes to pay such sums as the assured ... shall have become legally liable to pay and shall have paid on account of: Loss of life of, or injury to, or illness of, any person.

*Smith,* 1987 AMC at 1130.

and *Smith,* the *Dubois* court concluded that general maritime law prohibits the collection of punitive damages from an insurance company, reasoning that public policy disallows recovery of punitive damages from an insurance company. *Id.* at 302–03.

Both district court cases rely heavily on *McNulty*[7] to arrive at their conclusion that punitive damages are not recoverable against an insurance company under general maritime law. The thirty-year old *McNulty* decision did not even involve federal law; it was a diversity case, where the district court interpreted the public policy of Virginia and Florida. Additionally, *McNulty,* involved automobile insurance, not maritime insurance. The *Smith* court, then, while purporting to rely on *McNulty,* nevertheless primarily based its decision on the express policy language, buttressing its opinion with a citation to *McNulty.* Similarly, in *Dubois,* the court relied on both *McNulty* and *Smith* to reach its conclusion that maritime law prohibits the recovery of punitive damages from an insurance company. *See Dubois,* 651 F.Supp. at 299.

We find that these cases have not established a specific and controlling federal rule disallowing the recovery of punitive damages from an insurance company. The district court, therefore, should have applied the law of the state having the greatest interest in the resolution of the issues. *See Truehart v. Blandon,* 884 F.2d 223, 226 (5th Cir.1989) ("In identifying the appropriate state law to apply, we look to the state having the greatest interest in the resolution of the issues."), *citing Transco Exploration Co. v. Pacific Employers Ins. Co.,* 869 F.2d 862, 863 (5th Cir.1989). Accordingly, we find that the district court erred in granting summary judgment in favor of Lloyd's on the basis of maritime law.

---

[7]In *McNulty,* after examining an automobile liability policy in a diversity case, the court articulated the policy behind disallowing wrongdoers to insure themselves against punitive damages, stating:

> It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent.

*McNulty,* 307 F.2d at 440.

## III

For the foregoing reasons, we REVERSE and REMAND to the district court to determine whether punitive damages may be recovered under the appropriate state law.